IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KEITH DUNMORE,**

   **Petitioner,**

 v.          **CIVIL ACTION NO. 1:05cv119**
               **(Judge Keeley)**

**WARDEN K.J. WENDT,**

   **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On August 18, 2005, the *pro se* petitioner, Keith Dunmore ["Dunmore"], an inmate at FCI-Gilmore, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241, seeking the expungement of disciplinary charges from his record, reinstatement of visiting privileges, and restoration of Good Conduct Time credits. By Order entered on August 26, 2005, the Court ordered the Government to answer the petition. On September 27, 2005, the Government filed a Response to the Order to Show Cause. Along with the response, the Government provided the Court with several exhibits, including: (1) the Declaration of Deborah Livingston; (2) the Declaration of Sharon Wahl; (3) Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>; (4) the Discipline Hearing Officer Report regarding Incident Report Number 1297559; and (5) Incident Report Number 1297559. On October 6, 2006, Dunmore filed Petitioner's Opposition to Respondent's Response. This matter is pending before me for an initial review and Report and Recommendation pursuant to LR PL P 83.09.

## II. FACTS

Dunmore was convicted in the District of Columbia Superior Court of kidnapping and armed robbery. Dunmore is currently housed at the Federal Correctional Institute in Gilmore, West Virginia. On January 1, 2005, an incident report was prepared charging Dunmore with a violation of prohibited act code 224 Assaulting Any Person; code 407, Conduct with a Visitor in Violation of BOP Regulations; and code 409, Unauthorized Physical Conduct. (Doc. 7-2, pg. 41) The report indicated that Dunmore grabbed his female visitor and pulled her down towards her seat. The visitor resisted by straightening her arm and holding on to the seat rail. Dunmore then became more persistent and forced his visitor down into her chair. He then placed his forearm and hand on her shoulder to keep her in the chair. A copy of the incident report was delivered to Dunmore that same day.

The Unit Disciplinary Committee ["UDC"] referred the charges to the Disciplinary Officer for further hearing. The UDC recommended 15 days disciplinary segregation suspended and one year loss of visiting privileges, should Dunmore be found to have committed the prohibited act.

By hearing form, dated January 17, 2005, Dunmore was advised of rights with regard to the disciplinary hearing. Dunmore indicated that he did not wish to have a staff representative but that he did wish to call one witness.

The Discipline Hearing Officer ["DHO"] hearing was held on January 26, 2005. The DHO found that Dunmore had committed the prohibited act of code 224, Assault.[1] In reaching her decision, the DHO considered the Incident Report, Dunmore's testimony, and that of the inmate witness called by Dunmore. The DHO sanctioned Dunmore to 30 days of disciplinary segregation, forfeiture of 60 days good conduct time, and loss of visiting privileges for twelve months.

---

[1] Codes 407 and 409 were expunged as they were duplicitous. (Doc. 7-2, pg. 39)

Dunmore filed an appeal with the Regional Director. His appeal was accepted, reviewed and denied. Dunmore then filed a final appeal with the National Appeals Administrator. The appeal was denied. Thereafter, Dunmore filed the instant §2241 petition.

### III. CONTENTIONS OF THE PARTIES

Dunmore raises the following grounds in his Application for Habeas Corpus:

(1) The DHO failed ro review the visiting room surveillance tapes as requested.

(2) The DHO falsified parts of her report in that she never took a statement from his inmate witness.

(3) The DHO failed to consider the affidavit of his female visitor.

(4) His evidence is greater than the untrue word of the visiting room officer.

The Government contends that the petition should be dismissed with prejudice or in the alternative that judgment be entered in its favor because:

(1) Dunmore was provided all of the Due Process Rights required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974) regarding the disciplinary hearing; and

(2) Dunmore's claim that the DHO's findings are insufficient to support the charges are without merit.

### IV. ANALYSIS

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. V and XIV, §1. A liberty interest is involved in the instant case as Dunmore was denied good time credit. See Young v. Kann, 926 F.2d 1396, 1399 (3rd Cir. 1991 (a federal prisoner "has a constitutionally protected liberty interest in good time credit").

In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court addressed

the due process that must be provided during a prison disciplinary proceeding. According to the Supreme Court, due process requires as follows:

(1) giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

(2) providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

(3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

(4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

(5) providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that Dunmore was provided due process as contemplated by Wolff.

First, Dunmore received written notice of the charges at least 24 hours in advance of the DHO hearing. More particularly, Dunmore received a copy of the incident report on January 1, 2005, and the DHO hearing was on January 26, 2005.

Second, Dunmore was provided a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary action. The DHO report, dated February 28, 2005, notes that he specific evidence relied upon to support the finding of Assault was the eyewitness account of the correctional officer, who was on duty in the visiting room. Furthermore, as noted in the report,

Dunmore admitted grabbing his visitor's arms. Finally, the report explains the reason for the disciplinary action. More specifically, the report states that "[t]he action on the part of any inmate to assault another person, whether or not serious injury is inflicted, threatens the health, safety, and welfare of not only the inmate involved, but that of all other staff and inmates. Inmates observing the assault may become involved thus creating a larger disturbance for staff to control. Assaults make it difficult to provide security for all concerned." (Doc. 7-2, Pg. 40)

Third, Dunmore was permitted to call a witness. He identified one inmate witness on his Notice of Hearing form, inmate Mims. Contrary to Dunmore's allegations, and despite the affidavit now provided by inmate Mims, the weight of the evidence establishes that he did, in fact, appear and make a statement. According the DHO report, inmate Mims was called and stated, "I was sitting in from of them. I never saw him grab her. I only looked back when the officer came over." (Doc. 7-2, pg. 38) In addition, the DHO has provided a declaration, dated September 20, 2005, that the inmate witness appeared at the hearing and made a statement. (Doc. 7-2, pg. 1). Furthermore, although Dunmore now complains that the DHO did not consider the affidavit of his female visitor, that affidavit is dated February 17, 2005, and is addressed to Mr. Heady, his Unit Manager. Therefore the affidavit was not available when the hearing was conducted on January 26, 2005, and the DHO never saw the affidavit before she issued her report on February 28, 2005. (Doc. 7-2, Pg. 1) Finally, although Dunmore complains that the DHO did not review the visiting room videotape from the date of the incident, the Hearing Form reveals that he did not request that the video tape be reviewed. (Doc. 7-2, Pg. 47) Furthermore, the declaration submitted by the DHO establishes that Dunmore did not request that the videotape be reviewed during the DHO hearing. (Doc. 7-2, pg. 1)

Finally, Dunmore waived his right to have an inmate representative (Doc. 7-2, pg. 47), and there is no evidence the DHO was not an impartial fact finder. Although Dunmore alleges that the

5

DHO prepared a false report and denied him the right to call his inmate witness, as discussed above, the evidence does not support his claims. Based upon the record before the Court, the undersigned finds that the DHO report does not reveal any bias and that there is no justification for finding the DHO was biased.

Not only was Dunmore provided all the due process rights required by Wolff, the findings made by the DHO are sufficient to support the finding that Dunmore violated code 224, Assault, of the Inmate Disciplinary Policy. The Supreme Court held in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

In reaching her decision, the DHO considered the Incident Report, the testimony of the inmate witness, and the testimony of Dunmore, himself. Although Dunmore denied the charges, he admitted grabbing his visitor's arms.[2] The DHO considered all of the evidence and determined that there was no reason for him to place his hands on his visitor under the stated circumstances, and that his physical restraint of her could have caused serious injury. Clearly, there was "some evidence" to support a guilty finding in this case, and the DHO's decision must therefore stand.

---

[2] Based on the entire record, it appears that Dunmore's female visitor was his girlfriend, who was accompanied by her nine year old son. Dunmore alleges that he grabbed his girlfriend's arms to prevent her from wiping the child's hands off, and thereby treating him like a baby. He specifically denies that he "assaulted" her.

## IV. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner and to counsel of record..


DATED: July 18, 2006

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE